All right, counsel, you may begin when ready. Please feel free to adjust the microphone so that we can hear you and see you. Everything goes for counsel. All right, please proceed. Good morning, Your Honors. May it please the Court. I know we have several issues that we're sort of contesting here. I think the biggest one, the one that has, in my view, the biggest beat on the bone is obviously the disposition of the mayoral residents and the satisfaction of the underlying debts and liens. Now, from our viewpoint, the way this one has played out is that the husband was sort of stacked with the lion's share of the liens and other encumbrances on there. The way the judgment was drafted, our interpretation of that has been that he has to essentially satisfy all of those and that the proceeds from the sale were to go to the wife. Now, as we frame the issue, we looked at it here as we used this kind of charged term, de facto dissipation, not to be provocative with the Court, but just to point out that it's a very unusual situation where you have to almost reimburse the mayoral estate and then take those proceeds and then give them to the wife. Counsel, question. In going through the record, were all of the liens actually identified? Did we have documents that showed the liens? There was some testimony and then in the underlying judgment for dissolution, I believe the Court itemizes each of those liens. And I know the parties agreed that there were multiple liens, but the question that I really have and that I was working with is whose liens are those? If there's only one business person in the house, according to the testimony, that is your client, the other party might be involved in certain things and administrative things, signing checks, but, and there is a disagreement about that, I get it, but if we don't have the liens to look at, how do we know that they didn't come as a result of your client's activities or failure to pay taxes, failure to pay liens, failure to do whatever is itemized? I agree with Your Honor that there was a lot in this record that you may not normally see in other cases where there might be some more developed exhibits. Well, yeah, there isn't a lot in this record. It's not in this record. That's my point. Why weren't these liens all identified on paper in this record? That, Megan, Your Honor, is part of that. It would require me to sort of guess what was going through the trial attorney's mind when they executed this. But I acknowledge there is a dearth of documentation. We do have a little bit shown in the chapter in the bankruptcy petition that was filed. There is some itemization there, but I'm understanding that that's sort of like a peat and repeat, kind of an echo of what the underlying liens were. I would argue, though, that both parties kind of have litigated and sort of taken a position that those liens are what they are and the amounts are what they are. Though I understand Your Honor's concern that there wasn't much discussion as to, you know, how they came about, except that some of those were taxes. There was some discussion as we looked at the Chad Brody lien where, you know, the circumstances in which it came about, a bit unusual, atypical perhaps, what we might see in normal cases. But it was argued to be some sort of business loan taken to sort of satisfy, I guess, some disagreement that occurred in Africa. But again, the underlying issue is that we've sort of stacked him with all of that, but there's a second part of the equation, though, which is that you can make him responsible for 100% of the liens. Maybe that's necessary in order to sell the house, but then now we have the entire proceeds going entirely to the wife, and that is the big asset here. It's almost a million dollars. Well, he was supposed to pay some of those. I mean, it's assumed he would pay some of those loans, liens, pardon me, loans, liens attributed to him from his shared proceeds. And isn't that how it should have distributed, and isn't that how it did distribute? Well, if Your Honor is referring to his testimony where he offered, and I understand that's a big issue, and I think myself and both Judge Archambault, I think, see it this way as well as a threshold issue whether my client's testimony can't be overcome by his counsel's argument at the closing, whether in either an invited error or some other document maybe we didn't identify. The way I look at it, though, is that in terms of the document of invited error, did that cause the court to rely on his testimony or do that in some way, shape, or form? We do know that when we get to the closing arguments, the argument portion of it, the attorney was asking for sort of a 50-50 split. And so from our viewpoint, if this is going down that course of invited error, we feel when we look at the long-lived case law, that it really comes down to how the attorney tries to execute his case. Sometimes we have clients that aren't very artful when they testify, and I look at it as the attorney clarifying what he meant and clarifying what he felt was an equitable distribution of the estate. Excuse me. Yes, Your Honor. The judge said in his written judgment that he considered the factors. And, you know, I appreciate you seem to be saying, well, we put forth the de facto dissipation as sort of a forensic mechanism to say this is inequitable. But the trial court said he considered the factors, and considering all of them decided that equity called for the husband to bear the brunt of those liens and that the wife got the lion's share of the marital home. How do we reverse that? Well, that goes to my backup argument. And in the case of the first one, it falls short of the mark, if you will, of my alternate argument was that this division was an abuse of discretion, which I understand is a very difficult thing to show. It's been historically to say, if I may use this phrase, that no other judge would have done what that judge would have done. To the best of my knowledge, I was able to research, and I hate to say it this way because sometimes you invite different challenges when you say this, but in my research I was then able to locate one where we had a home that was very close to $1 million where we awarded essentially all the proceeds to the wife upon the sale and stacked the husband with all of the debt without something greater occurring, like a dissipation claim or something that really warranted that. Because when you look at the entire marital estate, there's other items there, but by and large this is essentially the biggest, largest asset, not just by a little bit, but by a mile. And so we feel that going that far was a bit farther off the mark than even an abuse of discretion would entertain. So I think this Court could look at that and say this was too much, this was an abuse of discretion and it should be sent back, if not for the lien portion, as we note in the brief, at least for the distribution portion. There is a comment that we note just in the brief where the Court seemed to be considering maybe a 50 percent or division. I don't know if that was a discrepancy there. I don't want to enter a conjecture because it was kind of a blink and you missed it sentence in the underlying judgment. But we feel that the way this is done is that he's getting stacked with the debt, she's getting all of it, and I think just based on the magnitude of the value of this asset, it was an abuse of discretion. So I think this Court, if it wanted to – I'm sorry. Can you point out any testimony that the Court could have relied on to give Mrs. Paul any of this debt or any of the responsibility for these liens other than the one she took credit for? I mean, how could the judge have done that? Because she wasn't an owner of the business. She wasn't the primary CEO of any of the businesses. She didn't have any responsibility, at least nobody that I – or no testimony I found that she was responsible to pay tax liens or to pay unemployment compensation over. I mean, so what testimony can we rely on, what evidence can we rely on, to determine that she should have some responsibility? Well, Your Honor, I would say they were married for a very long time, and so I think it's presumable, you know, given the lifestyle they were living, that they were certainly taking advantage of the financial benefit from these businesses as a married couple. And so it would be my argument that, you know, it would be fair to also take that into consideration when dividing this, sort of like privatizing the gains and socializing the losses, if you will. So in that instance, I think this Court could consider that as part of – Do you have any case that would give us some lead on that? Again, I mean, looking at this case and getting prepared, I didn't find anything that said, you know, that that would be a reason to do a distribution of equal distribution of the debt. Yeah, and that kind of falls within our backup argument with the abuse of discretion, which is that we've assigned him 100% of the debt and assigned her 100% of the proceeds. Well, she got – she took credit for a couple. They weren't the biggest ones, but they were a couple. From what I understand, when the house was liquidated, none of the proceeds went to my client. I know we can only consider what's – Is there anything in the record as to what proceeds there were? I'm asking if there's anything in the record as to what the proceeds were or would have been. Only subsequent to the underlying credit. My understanding is – Wait, wait. Your voice dropped. I apologize, Your Honor. Subsequent – just speaking to what's in the record. Subsequent to the appeal, there was a contempt hearing that occurred, which I wasn't a part of, but it occurred, I believe, on May the 23rd, where, if I recall from the transcript correctly – But that's not in our record? That's not in your record, Judge, because that's subsequent to the notice of appeal being filed. Okay, so there's nothing in our record. Not in your record, no, Your Honor. But I just would say that the way that it played out was that none of the proceeds went to him. But we don't know if there were any proceeds. As far as in the record, that's correct, Your Honor. Thank you. Counsel, I wanted to give you a couple of minutes to address the other two arguments in – well, I mean, you have three other arguments in the brief. There's the third-party calculation concerning the income and then the allegation of error in determining John's income as well as attorney's fees. So I just wanted to give you time to address those. Thank you, Your Honor. I'll be very quick with that. I'll start with the attorney's fees. I feel that there was a step that was sort of skipped there, which is that normally you would submit the itemized attorney's statement. And if I understood the case more correctly in this district, there needs to be some determination of reasonableness. So usually the attorney is going to submit the itemized statement. Here's what I feel I'm entitled to. And there's also going to be that finding that having to pay that would be a problem or would put the person in a very problematic situation. I feel that from both standpoints, neither of those thresholds were met, so I think that one should be either vacated or reversed back for either an appropriate determination. Turning to child support, that one is a complicated situation because the court clearly made credibility findings, and that is a factor when you said support. I would stress, though, that one of those calculations, and I think regarding the $5,000, I think that was a number that probably should not have made it into the final calculus. I think there was a dearth of development as to that number in terms of, you know, I didn't see any allegation raised by any side or even the judge's rulings that that was a sham payment or it was a straw man. And so I think that number probably should have been omitted from the calculations, even if my other arguments are unable to sway this court. And yet there was no objection to the testimony when it came in. So how do we say that that finding was against the manifest weight of the evidence or that adding it back in as a pay-to-write was an abuse of discretion? Well, if my recollection of the record is accurate, Your Honor, I don't believe either side testified that John was getting paid money, the $5,000 was going to him, or that there was something sketchy going on. The closest that my recollection tells me we get to it is that there was some dispute over what exactly the daughter was doing. And the testimony, if I remember correctly, was saying that there was some nondisclosure agreements that prevented that question from being answered. I don't recall any assertion by either party, at least during the course of testimony, that the payments were saying, hey, you know, he's claiming that, you know, he's sending her $5,000 or that Permex is sending her $5,000, but here's a deposit showing that he's getting the $5,000. So that's how I view that argument, Your Honor. And then for the remaining matters, I would just stand on the arguments raised in the brief. All right. I don't hear anything else. All right. You will have time in rebuttal. Thank you, Counsel. Thank you, Your Honor. All right. You may proceed when ready. May it please the Court. Counsel. My name is Gregory Jumbuck, and we obviously, with Judge Archambault, represent the respondent, happily, Jennifer Brody-Paul. The underlying issue in this case, and everything about this appeal, largely stems down to the fact that Mr. Paul has no credibility. And we all know that the trial court is in the best position to judge the witness' credibility, their demeanors. Judge Colosimo almost went out of his way, within, I believe, his Article 2.2 of his judgment for dissolution of marriage, to state, in, I believe, five different sentences, I don't believe what he said in somewhat more appropriate terms and more specific terms. And Justice Hutchinson, I don't want to forget one of your questions that you asked counsel. I believe there actually is one answer for it. It actually supports Judge Colosimo's findings, and that's Exhibit Number 130 in the record, is the default judgment that Judge Anderson in Will County entered against Mr. Paul as it relates to the Chad Brody lawsuit. So we have Mr. Paul now arguing on an appeal. Effectively, the exhibit he introduced, Exhibit Number 130, or Page 130, is his exhibit. I didn't show up to Will County Circuit Court, according to that order, and I had a default judgment entered against me. She should pay for it. That's the argument now. Or that it was error for Judge Colosimo to not require her, our client, to contribute in some way, shape, or form to that loan. And when you look at the loan and the terms of the loan, as well as what's in the record, the loan amount versus the interest amounts that Mr. Paul entered into are almost insane, but he entered into them. And that is, I think it's a $153,000 loan payable in 12 months with $63,000 of fixed interest for the first of those loans. He entered into those, I believe it was in 2018 or 2019, and there's no evidence that he fought, demonstrated in any way, shape, or form that he had satisfied those loans. When I looked at the order, it also appears that that was preceding his bankruptcy filing. It doesn't appear that that was actually discharged. The discharge order that trial counsel introduced doesn't actually demonstrate, from what I can tell at least, which debts were discharged in his bankruptcy. So when Judge Colosimo is reviewing the record and the testimony before him and the lack of credibility, I don't believe that there is any of this de facto dissipation that counsel frankly wants to create. And in preparing for argument, I will state that one of the issues that counsel can argue, but they raise in their brief that as a de novo reviewer, you should engage in a de novo review on this mysterious de facto dissipation which has never been found or created in any court that I can find in Illinois. As the Second District, you've repeatedly stated, whether or not dissipation exists is a manifest way to the evidence standard. Then the allocation of the marital property, because dissipation is part of the marital estate, is the abuse of discretion in terms of how that is then distributed in the review. I have no idea where they get the de facto dissipation or anything related to that being a de novo review. In fact, the case that they cite to in the specific paragraph that they cite to is a ruling on a motion, a 619 motion to dismiss, and clearly not a matrimonial case. So as it relates to that standard review, I want to make sure that I address that, that there's an absolute disagreement, and I frankly see no support, even in the case in which they rely upon, to try to get some type of a de novo review on the de facto dissipation. Well, in fact, there were two petitions or two notices of dissipation that were filed during the course of this litigation, but both of them were withdrawn, correct? Yes, that is my understanding. All right. And so by what authority could I create or this court create a new law of de facto dissipation when we don't even have a petition on file? I would hardly agree. You simply can't, and I don't know if that's the request for the de novo review to create that which has never been created. Well, de novo would indicate that we are looking at a statutory authority and interpreting it, because that would be our job. I can't find that statutory authority anywhere. Nora, I guess that's my point, is that I don't, I just want to make sure that I address at least the standard review issue because I believe it's an important issue. I don't mean to disparage counsel, but you didn't address it, but I want to make sure that I did address it since I don't get a rebuttal on it. So what about the allegation that the allocation was inequitable? So apparently approximately a million dollars on the house all going to the wife. So there was a $163,000 lien that both parties were responsible for that I believe was the fifth their bank admits in the record. Then there was an attorney's fee and a GAO lien that our client was responsible for. The remainder of the liens, in essence, were the Brody Paul lawsuit, which is a Will County default order that was solely against Mr. Paul. And then the remainder were the IRS liens. And in terms of what the record reflects in terms of those liens, as Justice Hutchinson had asked, those were all on him. I don't know how you can get more clear than Mr. Paul's testimony of, they're 100 percent mine, they follow me, I am taking them. And then argue and appeal, that should have never happened. I don't know what Mr. Oedekerke, our trial counsel, was supposed to do, say, are you really, really sure? I mean, the testimony was clear. So then when we're looking at an abuse of discretion standard as it relates to the remainder of the disposition of the marital estate, you don't, in essence, Judge Colissimo found, and this is also important, he has accounts he has not disclosed. That's the exact phraseology used by Judge Colissimo. What the value of those accounts are, we don't know, because he either hid behind the fact that there is these nondisclosure agreements. I don't know what issues. His counsel never introduced any of the bank account statements from the business to rebut those allegations that were being made by Ms. Paul and Mr. Oedekerke during the course of the trial that he had unfettered access, which is what the finding was by Judge Colissimo. So when we're dealing with a distribution... Is it a problem that he had the checking account, right, for the business, but is it a problem that it was never proven that he is an owner or 100% owner of the business? Justice Colissimo actually found and accepted the fact that he didn't have any ownership interest in the business. However, what he did find was that, in essence, he had unlimited and unfettered access to everything. So in reality, when you're running a business and maybe there's a shareholder suit against him, maybe there's a discharge claim against him, an additional debt that... I forgot the owner of the business who lived in Israel. I think it was Ari something he had. That would be a claim against Mr. Paul. However, as it relates to the fact that it's almost from what the record appears, at least in Judge Colissimo's findings are, that he operated as if he was the owner. So there's no value attributed to Permex in any interest that he may have to it. In essence, what we get to is the issue of the income and how he has access to the income. So while Judge Colissimo didn't impute income, in essence, this is almost an imputation case. Unfortunately, I was the trial head of public counsel on the Gossett case, so I'm very familiar with those factors. And the second factor, in essence, is what we have here. If we're going to go down the road of an imputation, which is trying to evade a support obligation. Clearly, in this case, Mr. Paul was trying to avoid any distribution of assets to my client, and he was clearly trying to avoid any type of a maintenance award and ultimately child support as well. Obviously, based on the age of the children, the child support award is going to be a shorter duration than that of the maintenance when we really kind of look at everything. So in terms of, Justice Kennedy, the answer to your question, this is almost, you read of counsel, it's a bit of a lack of a record, but my analysis of it and how I read Judge Colissimo's judgment combined with the evidence that's presented is he basically was the owner, but we can't give her any interest in the business. There's no valuation of the business. But like many dissociative marriage cases where we have small interests or businesses, the value isn't the business. The value is the income, right? It's determining what the income is of the payor for purposes of support. And that, again, is where Judge Colissimo found that Mr. Paul lacked credibility and lacked believability. In terms of the $5,000 that counsel objects to, actually, it's somewhat easier when you're not the trial counsel. You look back and say, well, you saw where this was going. You saw where the cross-examination was going. When you redirect Mr. Paul, who's the CEO, who apparently has, he's a registered agent, he's a CEO, he has access to all the business records, why would you not request a protective order of Judge Colissimo and bring in the business records to demonstrate that these are, in fact, fair salaries being paid out, these are, in fact, fair wages being paid out? Because when you do the math, the daughter, if you believe Mr. Paul, that the business is paying the mortgage for her residence in Texas, she's making about $12,000 less annually. If that's the only income she would receive was the $5,000 payment. She's making about $12,000 less annually than the CEO of the company. So as we examine the record and what is before us, yes, there's things that could have been done differently. Yes, we would all love more information. But the reality is this was Mr. Paul's case. He's the petitioner. And any lack of information that is in the record falls on him. And so when we examine this, especially, I believe, everything, frankly, to be under an abusive discretion standard, clearly Judge Colissimo's decisions should be upheld. To get to the kind of the last issue of the attorney's fees, counsel stresses within their brief that the fee petition was filed under Section 508B. And under Section 508B, when we really review the record, number one, in terms of the invited error issue, I think there might be a little bit of that because there is no – Judge Colissimo clearly states in counsel reflects in his brief that he was taking the issue of the fee petition with the trial. Whether it doesn't appear, I'll acknowledge that the billing statements weren't provided. The closing argument states that there's roughly $20,000 incurred by OTC and they requested a full $20,000. Judge Colissimo granted $10,000. When you, again, look at the fact that Judge Colissimo states he didn't disclose everything. There are clearly accounts that have not been disclosed. That gets back to the exact discovery issue. May I interpose?  It's a question. Leaving aside the equities or the use of discretion and the amount of the fees and let's accept it's $20,000, does it matter that the petition was under 508B when, unless I have this wrong, it seems to fit more neatly into 508A? I would agree that it might fit more neatly under 508A. My only response to that, and I fully acknowledge that. I'm not trying to skirt around the question at all. But as I review that issue myself with some level of consternation, to be blunt, and then you really look at the record and I go back and I think about the fact that this is a finding that he didn't disclose his accounts, that the motion was originally filed under 508B. But, again, we're not dealing with, let's say, the equities of it. The application of the judge's discretion, I guess I am concerned about whether or not that provides sufficient notice to the other side that, you know, you're seeking fees under 508A, which is a horse of a different color from 508B, which doesn't seem to apply. I tend to agree outside of the fact that when we exempt the plain language of 508B, and I'll acknowledge that there's not necessarily a specific finding by Judge Colosimo, but a relevant part of 508B states that, if at any time the court finds that hearing of the act was precipitated or conducted for an improper purpose, the court shall allocate fees and costs of the party, of all parties, excuse me, for the hearing to the party or counsel found to have acted improperly, improper purposes include but not limited to harassment, unnecessary delay, or other needlessly increasing costs of litigation. Moreover, as it relates to the issue in 508B of discovery, 508B provides that if noncompliance is with respect to a discovery order, the noncompliance is presumptively without compelling cause or justification, and the presumption may only be rebutted by clear and convincing evidence. So I guess my – I didn't see any of those findings in the written order. I acknowledge that those findings – I'm sorry, I didn't know that. No. I think you were anticipating my question, but since you're doing so accurately, go ahead. I acknowledge that those findings aren't necessarily there in the record outside of the statements by Judge Colosimo of, clearly there are accounts that weren't disclosed here. So getting back to the 508B issue, I think because it was framed in the original 508B petition as related to being discovery related, and in essence it seems like a lot of this trial was going around issues that – or was caused by issues that Mr. Paula saw not to be credible on from an abusive discretion center. I think that might be there, but I understand that there's – I accept that there's an issue. Yeah, ordinarily a petition is filed under 503J at the end, and that would presumably have some supporting documentation such as billing records. I don't – I accept that. I really have no response, and, again, the only thing I can tell from what's here, and I understand that Judge Colosimo's statement is based upon the incomes or the equity of the income, I believe, is what he stated during the hearing. That's, again, where I'm getting to the potential, at least from an abusive discretion potentially standard, that he did consider this actually a 508B and the incomes that he's referring to as the fact that the income was hidden. That's not clear in the record, but from an abusive discretion standpoint. Well, it's not clear in the record, but it's not clear in his order really either, because he's continuing it, he's taking it with the case after some argument about discovery or lack thereof. So, I mean, that petition relates to that issue, correct? Yes. It does not relate to all of the fees that might have been incurred throughout these proceedings? Absolutely. For whatever reason? For whatever reason, correct.  Any other? No. All right, thank you, counsel. Thank you very much. Counsel Rebuttal. Yes, thank you. Just very briefly, I'll start from back to front. In regards to the attorney fee issue, I would invite the court's attention to, or attention, I apologize, I can't talk today, to page 403 from the common law record, because that's where the judge issues the attorney fee award, but then indicates what the basis is. He uses the two words inequitable income. When we look at 508B, usually you're going to either violate a discovery order or you've done something to unnecessarily increase the cost of litigation, but I think it's pretty clear from the four corners of the judgment that we're looking at under the prism of 508A. There's even some mention, if my memory is accurate, from the closing argument by mom's counsel seeking that base, not so much on a 508B, but essentially some degree of contribution, if my memory is accurate. But be that as it may, I understand the case law also holds that the oral pronouncement differs from the written pronouncement. Usually the oral one controls, unless the written one's more specific. I don't think that's applicable here. In my view, I think that the court was trying to award under 508A, and the inequitable income, I think, is really the red flag for that award. Circling back to one of the notation on Exhibit 1, as noted in the record, this was a loan that was taken out from the brother-in-law. I'm sure this court has seen many lawsuits between family. Usually we don't see too many where the brother's going to sue the sister directly, and she wasn't even named in the lawsuit. It was just Mr. Paul only. So I understand the terms of it were a bit peculiar, and it didn't enter into a default judgment. There was a bankruptcy. Obviously, when you secure it before the filing, the lien still survives, even though the debt is discharged. So, again, we still feel that the distribution was inequitable. And aside from that, I will stand on the other arguments I raised in my group. Well, it's clear in the order that talks about distribution of the proceeds of the house that it's a little complicated as you read it, but it looks like it went 50-50. Take off, well, first of all, take off the traditional costs of sale and certain other things that had been agreed to. Now we go 50-50, and the trial court says that it is clear that these liens that have been attributed to your client exceed that 50 percent that was left. So there was a distribution to your client on paper of 50 percent of the net proceeds, correct? That is not how we had interpreted it when we read it against the other terms. I understand what the section you're referring to, and it's one that is a bit of a head scratcher because then I look at how they define the net proceeds section of the judgment where they're walking out all the liens, which is consistent with the wife's testimony because that's what she asked for as well during her testimony. So the way that I've interpreted it, and if the court's inclined to take judicial notice of the court file, that seems to be how the parties have been handling the execution of the judgment as well post-appeal. So we don't know how. I understand that section's in there, and it's one that has baffled me when read in conjunction with the definition of net proceeds, and I can only guess that maybe the court was considering doing something different than what it was but then opted to go into the direction of distributing all the net proceeds to the wife once the house is sold. All right. Any other questions? All right, thank you, counsel. Thank you. All right, we will take the matter under advisement and issue our disposition in due course.